BOTSFORD v. CHASE.[1]

1. SLANDER—EVIDENCE—FINANCIAL STANDING OF DEFENDANT.

Evidence of the financial standing of the defendant in a civil action for slander is admissible to show the influence his word would have in the community.

2. SAME—PLEADING—EVIDENCE.

Where the gravamen of the claim laid by the plaintiff in an action for slander is that, by reason of the false and defamatory statements of the defendant, plaintiff's neighbors and friends have refused to have business dealings with him, and that he has been compelled to resign his position as manager of a corporation, and to sell his stock therein, evidence that upon such sale plaintiff received the full value of his stock is properly excluded as immaterial.

3. SAME—MALICE.

In an action for slander, evidence of other slanderous statements than those alleged in the declaration, made during the course of the same conversations, and being of the same general character, is admissible to show malice and ill feeling on the part of the defendant.

4. APPEAL—PRESUMPTIONS.

Where the record on appeal does not show that all of the testimony is returned, it will be presumed that there was evidence justifying the instructions to the jury.

Error to Kalamazoo; Buck, J. Submitted January 17, 1896. Decided February 26, 1896.

[1] Rehearing denied March 11, 1896.

Case by James E. Botsford against Nehemiah Chase ·
for slander. From a judgment for plaintiff, defendant
brings error. Affirmed.

*A. M. Stearns* and *Howard & Roos*, for appellant.

*E. M. Irish* and *N. H. Stewart*, for appellee.

LONG, C. J.   Plaintiff, with defendant and other per-·
sons, at Kalamazoo, in the year 1892, organized what is
known as the Botsford Paper-Mill Company, as a corpo-
ration.   The capital stock was $100,000.   The plaintiff
took $10,000 of the stock, and defendant also became a
large shareholder therein.   The plaintiff became the gen-
eral manager of the company, and the defendant its pres-
ident.   The whole capital stock was paid in, and the mill
built and equipped in April, 1893.   It was then dis-
covered that the capital stock was not large enough, and
it was increased to $120,000.   Thereafter it was increased
to $150,000.   This $50,000 was not paid in, when the
plant was mortgaged for that amount.   Some feeling
grew up between the parties in reference to the manage-
ment of the concern; and defendant contends that plain-
tiff, when about to organize the corporation, represented
that he was a practical paper-mill man, of large experi-
ence, and that $100,000 would be ample capital stock
to build the plant and furnish sufficient working capital;
that, relying upon this, he had taken $10,000 of the stock,
and induced his friends to take the balance, aside from
what the plaintiff took,—when in fact the plaintiff was
not a practical mill man, and had had no experience
whatever in paper making.   Frequent meetings of the
board of directors were held, and the plaintiff contends
that at these meetings, and in the presence of other par-
ties and at other places, the defendant made certain false,
slanderous, and defamatory statements of and concerning
him.   This action was brought to recover damages for

108 MICH.—28.

such defamatory words. On the trial the plaintiff had verdict and judgment for $5,000. Defendant brings error.

The defamatory statements, as laid in the declaration, are:

" He has attempted to bribe me to keep still."

" He has attempted to bribe me to keep still, by agreeing to give me too high a price for paper frames."

" I offered to make the paper frames for 12 cents apiece, and he paid me 16 cents."

" He agreed to pay me 16 cents, and would have paid me 19 cents, or any other price I would have asked, in order to have me keep still."

The declaration alleges that, previous to the time of such conversation, the plaintiff had made a certain contract for paper frames, in behalf of the paper-mill company, with defendant, for a fair and reasonable price, and that by the language aforesaid the defendant meant, and intended to have the public and the persons interested in said corporation to understand, that the plaintiff agreed to give the defendant a higher price for said paper frames than they could be bought for in the market, and so give it in fraud of the rights of the company, for the purpose of bribing the defendant to keep still about and conceal some act of the plaintiff, which act defendant meant, and intended the public and said persons should infer, the plaintiff had done against the interests of the said corporation.

The declaration further alleges that the defendant further stated of and concerning the plaintiff: " He is dishonest and incompetent;" also, the words:

" I have looked Botsford (meaning plaintiff) up, and find his record is not good."

" I am informed that he has failed in business East."

" He does not dare to own any property. Everything is in his wife's name."

" The Botsford Paper-Mill Company is gone to the dogs, and, unless we get Botsford out, we are gone."

" Botsford is dishonest."

" He has bribed me, by making a contract to furnish slats to the company, and I have papers in my pocket to prove it."

" Botsford is not fit to manage the mill."

" He does not understand his business. There is no head or tail to the business."

" Botsford is rotten."

The declaration then alleges that the defendant intended by the expression, " Botsford is dishonest and incompetent," that the plaintiff was dishonest and incompetent in the management of such business, and as a business man in his said trade, occupation, and business as aforesaid; and that, by reason of the premises, the plaintiff was compelled to resign his position as manager of the company, and to sell his stock in the corporation. It appears that at the request of the board of directors, after the difficulties arose, both parties resigned their positions, and the defendant purchased from the plaintiff his shares of stock, paying par value therefor.

Of the errors claimed, which were argued in this court, we think but three need be discussed:

1. The court charged the jury as follows:

"If, the jury find that the slanderous words were spoken by defendant against the plaintiff, then, in estimating the plaintiff's damages, they may take into consideration the wealth and standing of the defendant in the community, with a view of determining the weight and influence which his false statements may have had in injuring plaintiff."

It is contended that there was not a particle of evidence introduced on the trial showing, or tending to show, that the defendant was a man of wealth, and that the above charge, taken in connection with remarks of counsel on the trial, calling the defendant a "bloated paper-mill baron," prejudiced the defendant before the jury.

The rule is well settled in this State that the pecuniary standing of the defendant in a civil action for slander may be shown, to prove the influence his words would have in the community. *Brown* v. *Barnes*, 39 Mich. 211. That

case has been cited with approval many times, and the rule there laid down has at all times since been followed in this court. We are unable to say in this case that there was no testimony which would warrant the instruction. It was shown, as appears by the record, that the defendant was a large owner of stock in this corporation. But, aside from this, the record does not purport to contain all the evidence taken on the trial, and there may have been other evidence which warranted the court in giving the charge complained of. Just what led up to the remark of counsel above quoted, the record does not show. It may have been in answer to remarks of counsel on the other side. It may also be said that the record does not disclose that the attention of the trial court was called to these remarks, and there does not appear to have been any exception taken thereto.

2. On the trial the plaintiff contended that he had been largely instrumental in organizing the corporation, and in securing and establishing trade and business therefor, and that, by reason of the alleged slanders, his relations with the corporation were broken off, and he was compelled to resign his position and sell his stock. He testified that he had had 13 years' experience in the general paper business,—buying, selling, and jobbing; that he was engaged about three months in organizing this corporation, before it became a corporation, and that the construction took nearly a year; that the company then commenced making paper, and continued about three months; that his salary was to commence at $3,000 a year, when it got to making paper; and that he was paid that salary monthly until the time of his being compelled to resign his position. He also testified, substantially, that the defendant made statements to the board of directors and others that he was rotten to the core; that he had attempted to bribe him (the defendant); that he was dishonest, and incompetent to run the business; that the defendant refused to pay the balance of his subscription, but made the proposition that he would do so, and

furnish capital stock for the company, if the plaintiff would resign; that it was thought by the board and by himself that, unless some reconciliation could be made, the enterprise would go down; and that, therefore, to prevent this disaster, he offered to sell out his stock, and did sell it to the defendant. It is claimed that it was under these circumstances, and through the false, slanderous, and defamatory statements of the defendant, that the committee of stockholders appointed by the company requested him to resign.

On the trial Mr. Buckhout was called as a witness by the defense, and testified that he was one of the stockholders of the concern, and had general supervision over it after the plaintiff resigned. He was asked by counsel to state the situation of the company, and what the stock was worth, in April or July, 1893, and answered:

"I don't think I could state that.
"*Q.* You sold some stock afterwards, didn't you?
"*A.* Yes, sir.
"*Q.* You knew of some being bought and sold?
"*A.* Yes, sir.
"*Q.* And you knew all about the assets and liabilities of the concern?
"*A.* Yes, sir.
"*Q.* I would like to get your best judgment as to the value of the stock about that date."

This was objected to, and the objection sustained, the court stating:

"If, on reflection, he has a judgment, he can state it; but I do not think it should be stated until he expresses some knowledge as to its value. * * * I think you should first show that he has knowledge of the market value; that is, of his own opinion."

The question was then asked:

"You may state, Mr. Buckhout, whether or not you have any knowledge of its market value.
"*A.* Well, I cannot say that I have. It is a pretty difficult matter to answer a question of that kind."

He was then asked if he knew of any stock being offered for sale in July, 1893 (this was about the time the plaintiff sold his stock to the defendant), and at what price. He answered that he had known of some being bought and sold; but, under objection, the court excluded the answer as to the price, on the ground that it would not be competent to show what a part of the stock was bought and sold for. It is insisted that the market value could not well be shown; that the stock had no market value; but that, for the purpose of showing that the plaintiff was not injured in selling his stock at par to the defendant, the defense should have been permitted to show that other stock was bought and sold for less than par.

There is no allegation in the declaration that the plaintiff was compelled to sell his stock at less than its par value; but the complaint is that, by reason of the false, slanderous, and defamatory words of the defendant, divers of his neighbors and citizens, to whom his innocence was unknown, had, on account of such grievances, refused to deal or have business transactions with him; and also, by means of the premises, "the said office and relations which the said plaintiff held to the said Botsford Paper-Mill Company are broken up and destroyed, and the said plaintiff was compelled to resign his said position, and to sell his stock in the said corporation," to his great damage, etc. In other words, the gravamen of the claim is that by reason of the false, slanderous, and defamatory statements, his friends and neighbors refused to deal or to have business transactions with him, by means of which he lost his position, and was compelled to sell his stock; not that he was compelled to sell it at a sacrifice. Plaintiff had bought the stock, and paid par value for it. He sold it to the defendant for just what it cost him; and that he was compelled to sell it at all, and lose his place as manager, was what he complained of. The defendant was apparently ready and willing to buy, if the plaintiff would resign his management of the corpora-

tion; and this resignation, according to the plaintiff's theory, was brought about by the defamatory statements of the defendant. The defendant himself testified that he offered to purchase the stock, and pay in the balance of his subscription, if the plaintiff would get out. Under these circumstances, it is apparent that what other stock sold for about that time was wholly immaterial.

3. While the plaintiff was on the stand as a witness, he was asked to state what the defendant said about his keeping a false set of books. This was objected to, and the court admitted it solely on the ground that it bore on the question of malice. These words were not laid in the declaration, but appear to have been uttered in conversations with the plaintiff. The court was not in error in admitting this testimony. *Newman* v. *Stein*, 75 Mich. 405. While this testimony would not be admissible as a substantive cause of action, it was admissible to show the ill feeling which defendant had towards the plaintiff, and as tending to show malice. The jury were instructed that this testimony could be considered only as bearing upon the question of malice. There was no error in this.

Some contention is made that the slanderous words were not proved as alleged. As the record does not purport to contain all the evidence given on the trial, we are unable to determine that there was no testimony tending to prove the words laid in the declaration as having been uttered by the defendant.

Complaint is made also of the refusal of the court to charge as requested, and to the charge as given. We think the court was not in error in refusing the requests, and that the substantial rights of the defendant were fully protected under the charge as given.

The judgment must be affirmed.

The other Justices concurred.